UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
RICHARD DANIEL GUTIERREZ, as the :
Executor of the Estate of Aida Norma :
Gutierrez, :
                Plaintiff, : **OPINION AND ORDER**
v. :
                                              : 22 CV 2211 (VB)
ST. TERESA OF AVILA CHURCH a/k/a :
Church of Saint Teresa of Avila a/k/a Saint :
Teresa Church, :
                Defendant. :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Richard Daniel Gutierrez, as the Executor of the Estate of Aida Norma Gutierrez, brings this negligence action against defendant St. Teresa of Avila Church seeking damages for personal injuries Ms. Gutierrez sustained as a result of a fall in the Church's basement bathroom. Now pending is defendant's motion for summary judgment and to exclude the testimony of plaintiff's expert witness. (Doc. #62).

    For the reasons set forth below, defendant's motion is GRANTED IN PART and DENIED IN PART.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

    The parties have submitted briefs, statements of material facts pursuant to Local Civil Rule 56.1, and declarations with exhibits. These submissions reflect the following factual background.

1

I.     St. Teresa of Avila Church

St. Teresa of Avila Church ("St. Teresa" or the "Church"), was built in the village of Sleepy Hollow, New York, around 1907. Construction was carried out in compliance with the regulations of the time, which did not include building codes.

The Church bathrooms are located in the basement, which is regularly used for events and gatherings. The door to the women's bathroom opens inward onto a square entryway tiled in a green mosaic. Although the parties dispute the exact dimensions of the entryway inside the bathroom door, it is approximately a few feet by a few feet. The floor in the entryway is flush with the floor of the tile hallway outside, but the rest of the bathroom is raised. To access the stalls and sink area, patrons must turn right immediately upon entering the bathroom and step up from the entryway into the rest of the bathroom. The floor of the raised portion of the bathroom is finished in the same green mosaic tile as the entryway. The vertical face of the step is finished with large, square, black tiles. The parties dispute whether the step is three inches or four and a half inches in height.

II.     Ms. Gutierrez's Fall

On the morning on December 14, 2019, Ms. Gutierrez, then eighty years old, went with her family to St. Teresa to attend a funeral service. It was her first time at the Church. After the service, Ms. Gutierrez went to the basement, along with her husband and children, to use the bathroom. Upon entering the women's bathroom, Ms. Gutierrez did not see the entryway step, and tripped on the step and fell to the ground. Ms. Gutierrez's daughter was with her in the bathroom when she fell; her husband and son were waiting outside.

After the fall, Ms. Gutierrez and her daughter emerged from the bathroom and reported to Ms. Gutierrez's husband and son that Ms. Gutierrez had "tripped on the step that is in the door

2

and fell down and hit her head." (Doc. #62-25 at 128). Shortly thereafter, Ms. Gutierrez's family drove her to a hospital in Sleepy Hollow. There, she was diagnosed with a subdural hematoma and underwent a surgical procedure to relieve it which involved the removal of a portion of her skull. (Doc. #62-15 at 182). Later that evening, Ms. Gutierrez was transferred to a hospital in Manhattan, where she remained for about two weeks, until being transferred to a hospital in Washington, D.C., for an additional week. Ms. Gutierrez was then transferred again, this time to a hospital in Alexandria, Virginia, for approximately two months, where she underwent a second surgery to replace the portion of her skull removed in the initial surgery. (Doc. #62-25 at 146–49). Following the second surgery, Ms. Gutierrez was transferred to a rehabilitation center in Fair Oaks, Virginia, for another two or three months before being discharged in April or May 2020. (Id. at 146–48).

On March 17, 2022, Ms. Gutierrez commenced this action against St. Teresa, alleging the Church negligently failed to inspect and maintain the women's bathroom, in addition to failing to repair the step and warn patrons of the danger it posed. About a year later, on March 23, 2023, Ms. Gutierrez died. Her son, Richard Daniel Gutierrez, became the executor of her estate and the plaintiff in this suit.

## DISCUSSION

I. Admissibility of Plaintiff's Expert's Testimony

St. Teresa moves to exclude the testimony of plaintiff's expert, Edward W. Lindh, Jr., on the grounds that (i) Mr. Lindh has no training, license, or expertise that would qualify him to render an expert opinion, and (ii) he did not apply a reliable methodology in reaching his conclusions.

The Court disagrees with defendant's contention that Mr. Lindh is insufficiently qualified. However, the Court agrees Mr. Lindh's testimony must be excluded because his opinions are not based on a reliable methodology and because he asserts impermissible legal conclusions.

A.     Rule 702 and Daubert

Pursuant to Rule 702 of the Federal Rules of Evidence, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

Under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993), trial courts serve as gatekeepers for expert testimony. When deciding a motion for summary judgment, trial courts may also decide whether expert testimony is admissible. Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997). "Rule 702 requires a trial court to make an initial determination as to whether the proposed witness qualifies as an expert." Baker v. Urban Outfitters, Inc., 254 F. Supp. 2d 346, 352 (S.D.N.Y. 2003).[1] "If this threshold requirement is met, then a court must inquire into whether the scientific, technical or other specialized testimony provided by that expert is both relevant and reliable." Id. at 352–53. The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. Id. at 353.

---

[1]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

4

The Supreme Court has articulated four factors pertinent to determining the reliability of an expert's reasoning or methodology: (i) whether the theory or technique relied on has been tested; (ii) whether the theory or technique has been subjected to peer review and publication; (iii) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (iv) whether the theory or method has been generally accepted by the scientific community. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 593–94. However, these factors do not constitute a "definitive checklist or test." Id. at 593. Rather, a court should apply these factors flexibly. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999).

Moreover, "in analyzing the admissibility of expert evidence, the district court has broad discretion in determining what method is appropriate for evaluating reliability under the circumstances of each case." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002). This includes the "discretion under Federal Rule of Evidence 703 to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996). "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d at 267. "Only the methodology, not the district court's belief as to the correctness of such conclusions, is the focus of a Daubert inquiry." Schoolcraft v. City of New York, 2015 WL 6444620, at *2 (S.D.N.Y. Oct. 23, 2015).

"[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."

5

Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).  An expert must give "some explanation of the data, studies, or reasoning" used.  Donnelly v. Ford Motor Co., 80 F. Supp. 2d 45, 50 (E.D.N.Y. 1999).  With such an explanation, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  Gen. Elec. Co. v. Joiner, 522 U.S. at 146.  "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony."  Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d at 266.  Simply put, a court should exclude expert testimony when it is "speculative or conjectural, or if it is based on assumptions that are . . . in essence an apples and oranges comparison."  Boucher v. U.S. Suzuki Motor Corp., 73 F.3d at 21.

B. The Lindh Report

Plaintiff retained Mr. Lindh "to perform an investigation and form an opinion as to whether the conditions existing at the site at the time of the accident were in violation of applicable regulations, and or in violation of standard and safe construction practices in a manner to have caused the incident."  (Doc. #62-20 at 3 (the "Lindh Report")).  His expert report is dated June 24, 2024.

Mr. Lindh is a construction executive with a thirty-year career as a construction superintendent, foreman, and general contractor.  He has taken construction management courses and holds certifications in building codes and construction safety.  It is undisputed that Mr. Lindh is not an architect or engineer, and does not hold a post-secondary degree.

Mr. Lindh has never been to St. Teresa.  As a result, the Lindh Report relies on depositions, photos of the St. Teresa women's bathroom, and the results of the Church's 2022 inspection by the Village of Sleepy Hollow Department of Architecture, Land Use Development,

6

Buildings & Building Compliance to assess whether the bathroom complied with industry safety standards.  (Lindh Report at 3).

The Lindh Report asserts the step was three inches high, and thereby "lower than the industry standard minimum" safe height of four inches per step.  (Lindh Report at 16).  In his deposition, Mr. Lindh testified his understanding of the step's height came from an approximation in a report prepared by the Village of Sleepy Hollow.  (Doc. #62-18 at 108–09).  Based on this understanding, the Lindh Report goes on to conclude that the location and height of the step, without additional warning signs, "created an unsafe and trap like condition" that was the "proximate cause of [Ms.] Gutierrez's fall and injuries."  (Lindh Report at 17–19).  Lindh asserts the Church bathroom should have had a flat floor or a "ramped transition" instead of a step, or that, at a minimum, "several visual cues should have been provided" in the form of "warning signs, accent lighting, handrails, and contrasting floor surface colors."  (Lindh Report at 14).  The Lindh Report concludes that the "failure" of the Church "to provide a safe walking surface in accordance with the long standing, and well-established industry standards and regulations . . . , the single rise vertical elevation change at the subject step, along the path of ingress/egress, directly inside of the bathroom door, was a violation of [its] non delegable duty to provide [Ms.] Gutierrez with a reasonably safe premises."  (Lindh Report at 17).

To reach his conclusions, Mr. Lindh relies on his career expertise and the "customs and generally accepted practices" for the safety of step height and "walking surfaces," as set forth in various national, international, and New York state building and safety codes from the 1970s through 2024, as well as references to ancient and medieval architectural texts.  (Lindh Report at 4–10, 15–16).

For the following reasons, Mr. Lindh's testimony must be excluded.

7

1.      Qualifications

First, defendant argues Mr. Lindh's opinions should be excluded because he lacks the qualifications to offer expert testimony.

The Court disagrees.

Defendant asserts Mr. Lindh's testimony should be excluded because he has no college or post-graduate degree, formal training, license, or publishing or teaching history in any field, and is therefore "plainly not qualified to render the opinions he expresses regarding engineering, human factors, ergonomics, accident reconstruction, walkway or pathway safety, or architecture." (Doc. #62-26 at 18). This misses the mark. In general, "an expert should not be required to satisfy an overly narrow test of his own qualifications" because "[a]ssertions that the witness lacks particular educational or other experiential background, go to the weight, not the admissibility of [the] testimony." Am. Empire Surplus Lines Ins. Co. v. J.R. Cont. & Env't Consulting, Inc., 743 F. Supp. 3d 530, 539 (S.D.N.Y. 2024).

Indeed, "[a]ny one of the qualities listed in Rule 702—knowledge, skill, experience, training, or education—may be sufficient to qualify a witness as an expert." Am. Empire Surplus Lines Ins. Co. v. J.R. Cont. & Env't Consulting, Inc., 743 F. Supp. 3d at 538. This applies "[e]ven if a proposed expert lacks formal training in a given area" because "he may still have practical experience or specialized knowledge qualifying him to give[] opinion testimony under Rule 702." Id. Therefore, Mr. Lindh's thirty-year career in construction and certifications in safe building codes could be sufficient qualification to render an opinion regarding the safety of the step in the Church bathroom, so long as his experience aligns "with the subject matter of the proffered testimony." Id. Meaning, Mr. Lindh "must explain how [his] experience leads to

8

the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Id. at 538.

    2.   Methodologies

Nonetheless, the fact that Mr. Lindh qualifies as an expert does not end the Court's inquiry into the admissibility of his testimony. St. Teresa argues, and the Court agrees, that Mr. Lindh's opinion is not based on methodologies sufficient to satisfy Rule 702.

Expert testimony must be reliable. Courts refer to the "indicia of reliability identified in Rule 702," including "(1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case." Amorgianos v. National R.R. Passenger Corp., 303 F.3d at 265. When expert testimony "does not rest on traditional scientific methods . . . the reliability inquiry may . . . focus upon personal knowledge and experience of the expert." Lickteig v. Cerberus Capital Mgmt., L.P., 589 F. Supp. 3d 302, 330 (S.D.N.Y. 2022). But a district court is not required to rely on an expert's ipse dixit. Id.

The Lindh Report concludes the Church bathroom was unsafe and in violation of New York State Property Maintenance Code ("NYSPMC") Sections 301.2 and 305.4, which require owners to maintain their premises, including stairs, in safe condition. (Doc. #62-18 at 137; Lindh Report at 19). But the Lindh report is not based on reliable methods or the application of Mr. Lindh's decades of experience to the facts of this case.

To start, Mr. Lindh's conclusions derive from an understanding that the step in the Church bathroom is three inches in height, and his assertion that three inches is an unsafe height for a single bathroom step. Both conclusions are based on unreliable methods.

9

Mr. Lindh's belief that the step in the Church bathroom was three inches high turns entirely on one sentence in a 2022 inspection report prepared by the Village of Sleepy Hollow. (Doc. #62-18 at 108–09). The relevant sentence within that report is ambiguous; it concerns a request to install tile "flush with entrance level approx. 3 inches lower." (Lindh Report at 22). Mr. Lindh's reliance on this quote to establish the height of the step is impermissible speculation. Boucher v. U.S. Suzuki Motor Corp., 73 F.3d at 21 ("[E]xpert testimony should be excluded if it is speculative or conjectural"). The "3 inches" figure in the inspection report is not only an approximation of a measurement, it refers to the height at which tiling should be placed. On the face of it, it is unclear whether this measurement even refers to the step height. Notwithstanding this ambiguity, Mr. Lindh never personally inspected the bathroom, took any steps to measure the step on his own, or otherwise attempted to confirm the height.

Moreover, to the extent the Lindh Report has a methodology, it consists of listing "Regulations and Standards," which Mr. Lindh goes on to conclude the Church did not meet. (Lindh Report at 4–10). However, as Mr. Lindh testified, other than NYSPMC Sections 301.2 and 305.4, buildings are not legally required to be in compliance with the other codes and regulations cited in the Lindh Report. (Doc. #62-18 at 136–37). The relevance of the other regulations, or the Church's lack of compliance therewith is left unexplained.

For example, in the analysis section of his report, Mr. Lindh cites to the "Guidelines for Stair Safety, National Bureau of Standards Building Science Series 120" from 1978, to support his contention that "[t]he walking surface of the subject bathroom should not have had a step." (Lindh Report at 11–14). These guidelines are not legally binding on the Church and are nearly fifty-years-old. Yet Mr. Lindh does not explain why he relies on them. Similarly, Mr. Lindh quotes ancient and medieval texts, such as "Vitruvius (15bc)" and "Alberti (1452)" asserting the

10

ideal step height in ancient Roman and Greek temples, purportedly because these texts serve as the "guide to the construction industry." (Lindh Report at 15–16). These quotes and assertions divorced from an explanation of their importance are not a reliable methodology. Donnelly v. Ford Motor Co., 80 F. Supp. 2d at 50 ("Without some explanation of . . . the reasoning [the expert] employed, his conclusion is simply inadmissible ipse dixit.").

Mr. Lindh's opinions, premised on uncertain facts and no reliable methodology or explanation, are no more than impermissible ipse dixit, and must therefore be excluded.

### 3. Intruding on the Province of the Fact Finder

Mr. Lindh's expert testimony must also be excluded because it would impermissibly intrude on the province of the fact finder.

"It is a well-established rule in this Circuit that experts are not permitted to present testimony in the form of legal conclusions" because "[t]o allow such opinions would trespass on the province of the jury and the trial court." In re Platinum-Beechwood Litigation, 469 F. Supp. 3d 105, 115 (S.D.N.Y. 2020) (citing United States v. Articles of Banned Hazardous Substances, 34 F.3d 91, 96 (2d Cir. 1994)). Yet, Mr. Lindh repeatedly asserts legal conclusions, including that the Church had a "non-delegable duty" to Ms. Gutierrez; that it was on "notice" of the danger in the bathroom; that it was "negligent in allowing the condition to persist;" and, finally, that the "unsafe condition was a proximate cause of [Ms.] Gutierrez's fall and injuries." (Lindh Report at 17–19). This testimony impermissibly "undertakes to tell the jury what result to reach, and thus attempts to substitute the witness's judgment for the jury's." Davis v. City of New York, 959 F. Supp. 2d 427, 435–36 (S.D.N.Y. 2013).

Accordingly, the proffered expert testimony from Mr. Lindh is inadmissible, and St. Teresa's motion to exclude it must be granted.

11

II.     Motion for Summary Judgment

St. Teresa moves for summary judgment on plaintiff's negligence claim. The Church argues it did not owe Ms. Gutierrez an applicable duty, the breach of which resulted in her injuries. It contends Ms. Gutierrez's fall resulted from her own inattention. For the reasons set forth below, the motion must be denied.

A.      Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary

judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

B.  Negligence

To prevail on a negligence claim under New York law, which the parties agree applies in this case, "a plaintiff must establish . . . (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." Aegis Ins. Servs., Inc. v. 7 World Trade Co., 737 F.3d 166, 177 (2d Cir. 2013). It is a "threshold question" in negligence actions, "whether the alleged tortfeasor owed a duty of care to the injured party." Id.

In trip and fall actions such as this, "two related but distinct duties of a landowner are implicated." Reynolds v. Amtrak, 751 F. Supp. 3d 311, 321 (S.D.N.Y. 2024). The first is that "landowners in New York owe people on their property a duty of reasonable care under the circumstances to maintain their property in a safe condition." Freeman v. Intercontinental Hotels Grp. Resources, LLC, 2023 WL 4406028 at *3 (S.D.N.Y. Jul. 7, 2023). This may give rise to the second, related "duty to warn persons reasonably expected to be on the property of known dangers." Reynolds v. Amtrak, 751 F. Supp. 3d at 321. Although they are related, the two duties are "analytically distinct." Id. at 322. For instance, "a landowner has no duty to warn of an open and obvious danger," but "proof that a condition is open and obvious does not preclude a finding of liability against a landowner for failure to maintain the property in a safe condition," although it is relevant to a plaintiff's comparative negligence. Id.; Nipon v. Yale Club of New York, 2014 WL 6466991, at *8 (S.D.N.Y. Nov. 18, 2014) ("Whether [plaintiff] was paying attention to what [s]he was doing and exercising reasonable care . . . is a classic question of comparative negligence").

13

A court may grant summary judgment to a landowner in a trip and fall case "on the ground that the condition complained of by the plaintiff was both open and obvious <u>and, as a matter of law, was not inherently dangerous</u>," and therefore, the landowner owed no duty to warn. <u>Reynolds v. Amtrak</u>, 751 F. Supp. 3d at 322 (emphasis in original). With respect to the duty to warn, "the issue of whether a hazard is latent or open and obvious is generally fact-specific and thus usually a jury question." <u>Hammonds v. Burlington Coat Factory Warehouse Corp.</u>, 708 F. Supp. 3d 446, 449 (S.D.N.Y. 2023) (citing <u>Tagle v. Jakob</u>, 97 N.Y.2d 165, 169 (2001)). "The test for an open and obvious condition is whether any observer reasonably using his or her senses would see the condition." <u>Johnson v. Hill Country Brooklyn, LLC</u>, 100 N.Y.S.3d 609 (N.Y. Sup. Ct. Mar. 21, 2018). However, "[s]uch a determination cannot be divorced from the surrounding circumstances." <u>Chaney v. Starbucks Corp.</u>, 115 F. Supp. 3d 380, 386 (S.D.N.Y. 2015). "[E]ven visible hazards do not necessarily qualify as open and obvious because the nature or location of some hazards make them likely to be overlooked." <u>Nipon v. Yale Club of New York</u>, 2014 WL 6466991, at *6.

Likewise, "[w]hether a condition is [] inherently dangerous is [] a highly fact-specific question, and hence usually one for the jury." <u>Reynolds v. Amtrak</u>, 751 F. Supp. 3d at 322. The inherent danger of a condition "depends on the totality of the specific facts of each case" and "the Court may consider factors including the inherent nature of the condition at issue, evidence of prior accidents, whether there is a statutory violation, the frequency of inspections, photographs depicting the condition, and expert testimony" when making its determination. <u>Chaney v. Starbucks Corp.</u>, 115 F. Supp. 3d at 386. Summary judgment may be granted upon a <u>prima</u> <u>facie</u> showing the condition at issue is not inherently dangerous. <u>Id</u>. at 386–87.

Even when a landowner's property includes a dangerous condition, summary judgment may be granted for lack of breach when a landowner "neither created the alleged defective condition nor had actual or constructive notice of its existence." Freeman v. Intercontinental Hotels Grp. Resources, LLC, 2023 WL 4406028 at *3.  In such a case, the defendant "has the initial burden of making a prima facie showing" it did not create the defect and had no notice of it.  Id.  "Notice need be shown only when the owner did not create the condition."  Nipon v. Yale Club of New York, 2014 WL 6466991, at *8.  "[A]ctual knowledge" exists where a defendant "created [the defect] or received reports of its existence," while "constructive knowledge" exists when "the defect is visible and apparent" for sufficient time to permit the landowner's awareness.  Freeman v. Intercontinental Hotels Grp. Resources, LLC, 2023 WL 4406028 at *3.  "Generally, the question of whether a particular defendant showed sufficient care is a question for the jury."  Reynolds v. Amtrak, 751 F. Supp. 3d at 324.  However, "[s]ummary judgment is nevertheless appropriate where the record fails to establish a genuine issue of material fact with respect to creation" and notice.  Id.

    1.  Duty to Warn

St. Teresa avers it had no duty to warn Ms. Gutierrez of the step in the bathroom because (i) the step was "open and obvious to any person employing the reasonable use of their senses," (ii) the step was not inherently dangerous, and (iii) Ms. Gutierrez's fall was caused by her own inattention.  (Doc. #62-26 at 5–6).

The Court disagrees.

    a.  Open and Obvious

The Church points to "the very distinct color contrast between the light-colored mosaic tile floor and the jet black 4½ inch riser," which it argues were "sufficient . . . visual cues" to

15

render the step an open and obvious condition. (Doc. #62-26 at 5 n.2). But plaintiff counters that the placement of the step so close to the bathroom entrance, coupled with the fact that the same tile color was used in both the entryway and in the raised area of the bathroom, present a triable question of fact regarding whether the step was open and obvious for a first-time visitor to the Church, like Ms. Gutierrez. (Doc. #63 at 4). The Court agrees with plaintiff.

Although the face of the bathroom step is finished in black contrast tile, the edge of the black tile is thin when viewed from above. (Doc. #62-13 at ECF 2–4).[2] Thus, even though the step is visible, a reasonable jury could determine the "nature and location of [the step] make [it] likely to be overlooked." Nipon v. Yale Club of New York, 2014 WL 6466991, at *6.

Moreover, plaintiff contends the Church has, in the past, posted signs on the bathroom door warning about the step. If true, this would suggest that at some point the Church understood the step to be a latent hazard. In support, plaintiff points to the deposition testimony of Ms. Gutierrez's nephew, Americo Menendez, a long-time congregant at St. Teresa in his childhood throughout the 1970s and 1980s, who recalled a warning sign was placed on the door of the men's bathroom due to parishioners tripping frequently over the step. (Doc. #62-24 at 108, 115).

The Church disputes ever putting up a warning sign regarding the step in either bathroom. Pointing to declarations of Church staff, St. Teresa argues it has submitted "overwhelming evidence establishing that no warning sign existed in the decades prior to" Ms. Gutierrez's accident. (Doc. #66 at 10–11). St. Teresa also says Mr. Menendez's testimony should be disregarded because it is no more than "vague memories from his childhood in the

---

[2] "ECF —" refers to page numbers automatically assigned by the Court's Electronic Case Filing System.

1980s." (Id.). But it is for the trier of fact, not the Court, to resolve credibility determinations. Kaytor v. Electric Boat Corp., 609 F.3d 537, 545–46 (2d Cir. 2010). Mr. Menendez's testimony is sufficient to raise a triable issue of fact at the summary judgment stage.

Plaintiff has raised material questions of fact regarding whether the step is an open and obvious condition. Thus, whether the contrast tiling in the bathroom renders the step open and obvious, and whether the Church ever previously determined the step merited a warning sign, are fact-specific inquiries best left to a jury.

### b. Dangerous Condition

The Church avers the step was not inherently dangerous because it is four and a half inches in height, incorporates contrast color tiling, is located a safe distance within the bathroom entryway, and violates no building codes. In addition, St. Teresa contends there is "no prior history of falls, injuries or complaints" due to the step "in its more than 100-year history." (Doc. #62-26 at 7). In support, it relies on the testimony of its Church staff, as well as its expert, Dr. Marpet, and recent inspection reports by the Village of Sleepy Hollow, the latter of which the Church asserts concluded no dangerous condition existed.

But "[c]ompliance with a building code does not establish due care; compliance is only some evidence of due care." Nipon v. Yale Club of New York, 2014 WL 6466991, at *7. Therefore, whether or not the placement and design of the step violates building codes is not dispositive on the question of the step's danger. In any event, plaintiff disagrees and argues the step violates certain safety guidelines. With respect to the Church's other contentions, plaintiff disputes each of them.

Plaintiff claims the step is only three inches in height, not four and a half, which per plaintiff is below the minimum safe height for a single step. In addition, plaintiff maintains the

17

step is dangerously close to the entryway and contends the contrast tiling is insufficient to make the step readily visible. Finally, plaintiff points to Mr. Menendez's testimony that parishioners tripped over the bathroom step frequently in his childhood as evidence of the step's danger.

Thus, plaintiff has raised several material issues of fact that bear on whether the step is inherently dangerous, rendering summary judgment on this question inappropriate. As is generally the case, "[w]hether a condition is [] inherently dangerous is [] a highly fact-specific question, and hence usually one for the jury." Reynolds v. Amtrak, 751 F. Supp. 3d at 322.

### c. Inattention

Finally, St. Teresa contends it had no duty to warn of the step because Ms. Gutierrez was inattentive. This argument is misplaced. If a hazard is latent, a landowner has a duty to warn that is not nullified by inattention. Whether the Church had a duty to warn Ms. Gutierrez turns entirely on whether the step is open and obvious. St. Teresa cannot be relieved of its duty to warn of a latent hazard simply because Ms. Gutierrez may have also failed to look when she encountered it. Of course, Ms. Gutierrez's inattention is relevant to a determination of causation and her comparative negligence. Nipon v. Yale Club of New York, 2014 WL 6466991, at *8.

The parties' disputes present material questions of fact regarding whether the Church had a duty to warn Ms. Gutierrez about the step. Accordingly, St. Teresa's motion for summary judgment as to its duty to warn must be denied.

### 2. Notice

The Church contends it has not breached its duty to maintain the premises in a reasonably safe condition because (i) the step was not inherently dangerous, and (ii) as a result, it had no actual or constructive notice of a dangerous condition on the premises.

The Court disagrees.

Presuming the step is a dangerous condition, the Church could still prevail on summary judgment on the issue of breach, if it met "the initial burden of making a prima facie showing that it" did not create the defect and had no notice of it.  Freeman v. Intercontinental Hotels Grp. Resources, LLC, 2023 WL 4406028 at *3.  St. Teresa cannot carry this burden.

No reasonable jury could find that St. Teresa did not create the step and bathroom layout, nor could a reasonable jury find the Church had no notice of it.  Indeed, "[n]otice need be shown only when the owner did not create the condition."  Nipon v. Yale Club of New York, 2014 WL 6466991, at *8.  Because "this case involves a permanent fixture of the [Church], and there is no evidence that the premises were altered without the [Church's] knowledge and permission, proof of notice is unnecessary."  Id.

Thus, the Church's attempts to argue that it had no notice the step was dangerous are inapposite.  The proper inquiry for notice is whether the landowner is aware of an alleged hazard, not whether the landowner is aware of the danger of a particular condition it undisputedly created.  Even applying the Church's own test, summary judgment must be denied.  As previously discussed, the parties' disputes regarding several material issues of fact render the question of whether the step was dangerous best suited to a jury.  Likewise, the Court cannot determine at this time whether the Church was on notice of any danger caused by the bathroom step without parsing competing testimony and making credibility determinations.

Accordingly, St. Teresa's motion for summary judgment as to whether it breached its duty of care must be denied.

**CONCLUSION**

Defendant's motion is GRANTED IN PART and DENIED IN PART. The motion to exclude the testimony of plaintiff's expert is GRANTED. The motion for summary judgment is DENIED.

The Court will conduct a case management conference on October 8, 2025, at 2:30 p.m., to be held in person at the White Plains courthouse, Courtroom 620, at which time counsel shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will continue to make to settle this case. To be clear, counsel are directed to discuss settlement in good faith prior to that date.

The Clerk is instructed to terminate the motion. (Doc. #62).

Dated: August 18, 2025
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge